# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DUSTIN JOHNSON,        )
        )
   Plaintiff,        )
        )
vs.        )   CIVIL ACTION NO.:
        )   _____
MORRIS SCHNEIDER        )
WITTSTADT, LLC fka MORRIS    )
HARDWICK SCHNEIDER, LLC;   )
MSLAW, INC. fka MHSLAW, INC.; )
NATHAN HARDWICK IV, ESQ.;   )
MARK WITTSTADT, ESQ.;      )
GERARD WM. WITTSTADT JR.,   )
ESQ.,        )
        )
   Defendants.        )
_____)

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

COMES NOW Plaintiff DUSTIN JOHNSON ("JOHNSON" or "Mr. Johnson"), by and through his attorneys Gordon Rees Scully Mansukhani LLP, to allege against Defendants MORRIS SCHNEIDER WITTSTADT, LLC fka MORRIS HARDWICK SCHNEIDER, LLC ("THE MORRIS FIRM"); MSLAW, INC. fka MHSLAW, INC. ("THE MORRIS CORPORTION"); NATHAN

1

HARDWICK IV, ESQ. ("HARDWICK"); MARK WITTSTADT, ESQ. ("M. WITTSTADT"); and GERARD WM. WITTSTADT JR., ESQ. ("G. WITTSTADT") the following:

## INTRODUCTION

Dustin Johnson is the Fifteenth (15th) ranked professional golfer in the World. Each of the Defendants herein, THE MORRIS FIRM, THE MORRIS CORPORATION, HARDWICK, M. WITTSTADT, and G. WITTSTADT are Mr. Johnson's lawyers. HARDWICK played a particularly unique and significant role of trust and confidence, serving as one of Mr. Johnson's primary advisors on all matters relating to his career as a professional golfer, as well as an officer in Mr. Johnson's professional corporation.

HARDWICK is accused of embezzling Thirty Million Dollars ($30,000,000) from THE MORRIS FIRM. Before the accusations against HARDWICK were made public, he entered into a conspiracy with his fellow partners, M. WITTSTADT and G. WITTSTADT, to use the firm's clients and HARDWICK'S business contacts to misappropriate their money under false pretenses to fund THE MORRIS FIRM'S operations. They intended to and have threatened to use confidential information they obtained as Mr. Johnson's attorneys

to extort and dissuade Mr. Johnson from seeking to recover his hard-earned money.

The intended purpose of the conspiracy and scheme was to replace money in the law firm's deficient accounts to directly benefit HARDWICK, M. WITTSTADT and G. WITTSTADT and to cover up the fact that they and the firm had misappropriated and mismanaged client funds. Mr. Johnson was a direct target of this ill-conceived scheme.

HARDWICK, Mr. Johnson's trusted advisor and confidante, approached Mr. Johnson regarding "a really good investment." HARDWICK advised Mr. Johnson that, if he loaned THE MORRIS FIRM Three Million Dollars ($3,000,000), THE MORRIS FIRM would pay Mr. Johnson back Four Million Dollars ($4,000,000) in equal monthly installments over a thirty (30) month term commencing on September 6, 2014, secured by a Promissory Note. As a further inducement to induce Mr. Johnson to make this "really good investment," HARDWICK promised Mr. Johnson that his law firm's parent company, THE MORRIS CORPORATION, along with its owners, himself, M. WITTSTADT and G. WITTSTADT, would guarantee the loan on behalf of THE MORRIS FIRM

3

with a written Guaranty.

HARDWICK, however, concealed from Mr. Johnson that he had

misappropriated the firm's funds and concealed from Mr. Johnson that he had

promised M. WITTSTADT and G. WITTSTADT that he would obtain a loan from

Mr. Johnson to replace a portion of these depleted funds and use Mr. Johnson's

money the fund the firm's ongoing operations. M. WITTSTADT and G.

WITTSTADT knew that HARDWICK was going to do anything he could to

obtain as much money as possible from Mr. Johnson and their other targets.

Mr. Johnson trusted his lawyers and his law firm. HARDWICK promised

Mr. Johnson that the Promissory Note containing the terms they had discussed had

been executed by THE MORRIS FIRM, and that the Guaranty had been executed

by THE MORRIS CORPORATION. HARDWICK represented to Mr. Johnson

that both documents had been forwarded to Mr. Johnson's financial advisor, Roy

Adams. In reliance upon HARDWICK'S representations and promises, Mr.

Johnson wired Three Million Dollars ($3,000,000.00) to THE MORRIS FIRM'S

"Equity Partners Account" on August 6, 2014.

On or around August 27, 2014, the allegations against HARDWICK were

made public. Despite the serious allegations against him, HARDWICK assured

4

Mr. Johnson that HARDWICK had done nothing wrong, and that Mr. Johnson's loan was safe. Despite these assurances, THE MORRIS FIRM failed to make the required monthly payments on September 6, 2014, and October 6, 2014.

Thereafter, Mr. Johnson gave all Defendants notice of default and made a demand for payment. None of the Defendants have honored their obligations. Instead, in response to the notice of default and demand for payment, M. WITTSTADT, G. WITTSTADT and THE MORRIS FIRM threatened to disclose private and confidential information about Mr. Johnson, which they learned in the course of their representation of Mr. Johnson as attorneys, should he commence a lawsuit to seek repayment of the money. M. WITTSTADT, G. WITTSTADT and THE MORRIS FIRM further threatened to entangle Mr. Johnson in protracted litigation for years if he attempted to reclaim his money through a lawsuit. They also claimed that they were not his attorneys.

Without regard for Mr. Johnson's interests, Mr. Johnson's lawyers violated their position of trust and confidence and stole Three Million Dollars ($3,000,000.00) from their client. Mr. Johnson's lawyers placed their interests before his and fraudulently induced him to give them his hard earned money to pay for their firm's day-to-day operations. Mr. Johnson is stunned that the men in

whom he entrusted his career have so callously ignored his interests.   Mr. Johnson's lawyers stole his money.

## **PARTIES, JURISDICTION AND VENUE**

1.      Plaintiff JOHNSON is a resident and citizen of the State of Florida.

2.      Defendant THE MORRIS CORPORATION is a Georgia corporation and a citizen of the State of Georgia that may be served through its registered agent, Frederick G. Boynton, at 8200 Roberts Drive, Suite 200, Atlanta, Georgia 30350. MSLAW, Inc.'s principal place of business is 3560 Lenox Road, NE, Suite 3000, Atlanta, Georgia 30326.

3.      Defendant THE MORRIS FIRM is a Georgia limited liability company that may be served through its registered agent, Frederick G. Boynton, at 8200 Roberts Drive, Suite 200, Atlanta, Georgia 30350.  THE MORRIS FIRM's principal place of business is 3560 Lenox Road, NE, Suite 3000, Atlanta, Georgia 30326.   Its members and their citizenship are as follows:

> A.      Nathan Hardwick IV is a resident and citizen of the State of Georgia.
>
> B.      Arthur J. Morris is a resident and citizen of the State of Georgia.

6

      C.     Randolph H. Schneider is a resident and citizen of the State of Georgia.

      D.     Mark Wittstadt is a resident and citizen of the State of Maryland.

4.     Defendant HARDWICK is a resident and citizen of the State of Georgia and may be served at his place of residence at ██████████████████████ Atlanta, Georgia ████.

5.     Defendant M. WITTSTADT is a resident and citizen of the State of Maryland and may be served at his place of residence at ████████████████ Cockeysville, MD ████.

6.     Defendant G. WITTSTADT is a resident and citizen of the State of Maryland and may be served at his place of residence at ████████████████ Elkton, MD ████.

7.     This Court has subject matter jurisdiction over this Complaint under 28 U.S.C. § 1331 in that JOHNSON alleges claims under federal law, including 18 U.S.C. § 1962(c) and (d), and U.S.C. § 1343.

8.     This Court has subject matter jurisdiction over this Complaint under 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000 and is between

citizens of different States as to JOHNSON, a Florida citizen on one side, and all Defendants, non-Florida citizens, on the other side of the lawsuit.

9.     Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b) (2) because a substantial part of the events or omissions giving rise to the claims occurred, and a substantial part of property that is the subject of the action is situated in the Northern District of Georgia.

10.     At all times relevant herein, HARDWICK was a duly authorized agent of THE MORRIS CORPORATION as the principal, with such principal legally bound for the care and loyalty of HARDWICK in its business and bound for the neglect and fraud of HARDWICK in the transaction of such business.

11.     At all times relevant herein, HARDWICK was a duly authorized agent of THE MORRIS FIRM as the principal, with such principal legally bound for the care and loyalty of HARDWICK in its business and bound for the neglect and fraud of HARDWICK in the transaction of such business.

12.     At all times relevant herein, HARDWICK was a duly authorized agent of M. WITTSTADT as the principal, with such principal legally bound for the care and loyalty of HARDWICK in its business and bound for the neglect and fraud of HARDWICK in the transaction of such business.

13.    At all times relevant herein, HARDWICK was a duly authorized agent of G. WITTSTADT as the principal, with such principal legally bound for the care and loyalty of HARDWICK in its business and bound for the neglect and fraud of HARDWICK in the transaction of such business.

14.    At all times relevant herein, HARDWICK was a duly authorized employee of THE MORRIS CORPORATION as the employer, with such employer legally liable for the actions of HARDWICK in the scope of its business, whether the actions were committed by negligence or voluntarily.

15.    At all times relevant herein, HARDWICK was a duly authorized employee of THE MORRIS FIRM as the employer, with such employer legally liable for the actions of HARDWICK in the scope of its business, whether the actions were committed by negligence or voluntarily.

16.    At all times relevant herein, HARDWICK was a Director and Officer of THE MORRIS CORPORATION and owned 55.55% of the corporation.

17.    At all times relevant herein, M. WITTSTADT was a duly authorized agent of THE MORRIS CORPORATION as the principal, with such principal legally bound for the care and loyalty of M. WITTSTADT in its business and bound for the neglect and fraud of M. WITTSTADT in the transaction of such business.

18.     At all times relevant herein, M. WITTSTADT was a duly authorized agent of THE MORRIS FIRM as the principal, with such principal legally bound for the care and loyalty of M. WITTSTADT in its business and bound for the neglect and fraud of M. WITTSTADT in the transaction of such business.

19.     At all times relevant herein, M. WITTSTADT was a duly authorized employee of THE MORRIS CORPORATION as the employer, with such employer legally liable for the actions of M. WITTSTADT in the scope of its business, whether the actions were committed by negligence or voluntarily.

20.     At all times relevant herein, M. WITTSTADT was a duly authorized employee of THE MORRIS FIRM as the employer, with such employer legally liable for the actions of M. WITTSTADT in the scope of its business, whether the actions were committed by negligence or voluntarily.

21.     At all times relevant herein, M. WITTSTADT was a Director and Officer of THE MORRIS CORPORATION and owned 22.22% of the corporation.

22.     At all times relevant herein, G. WITTSTADT was a duly authorized agent of THE MORRIS CORPORATION as the principal, with such principal legally bound for the care and loyalty of G. WITTSTADT in its business and bound for the neglect and fraud of G. WITTSTADT in the transaction of such business.

23.    At all times relevant herein, G. WITTSTADT was a duly authorized agent of THE MORRIS FIRM as the principal, with such principal legally bound for the care and loyalty of G. WITTSTADT in its business and bound for the neglect and fraud of G. WITTSTADT in the transaction of such business.

24.    At all times relevant herein, G. WITTSTADT was a duly authorized employee of THE MORRIS CORPORATION as the employer, with such employer legally liable for the actions of G. WITTSTADT in the scope of its business, whether the actions were committed by negligence or voluntarily.

25.    At all times relevant herein, G. WITTSTADT was a duly authorized employee of THE MORRIS FIRM as the employer, with said employer legally liable for the actions of G. WITTSTADT in the scope of its business, whether the actions were committed by negligence or voluntarily.

26.    At all times relevant herein, G. WITTSTADT was a Director and Officer of THE MORRIS CORPORATION and owned 22.22% of the corporation.

## FACTUAL ALLEGATIONS

27.    JOHNSON hereby realleges and incorporates all allegations stated above as though set forth herein.

11

28.    THE MORRIS FIRM, THE MORRIS CORPORATION, and their employee attorneys, including HARDWICK, M. WITTSTADT, and G. WITTSTADT, provided legal services to JOHNSON as attorneys, individually and through his duly authorized agents, creating an attorney-client relationship and establishing all Defendants, jointly and severally, as JOHNSON'S attorneys and fiduciaries with an obligation to act solely for the benefit of JOHNSON with the highest degree of trust, honesty and good faith.

29.    For many years through and including October 2014, all Defendants, jointly and severally, provided legal services to JOHNSON as attorneys, individually and through his authorized agents, on personal matters and a broad range of issues relating to JOHNSON'S career as a professional golfer.

30.    HARDWICK is accused of embezzling Thirty Million Dollars ($30,000,000.00) from THE MORRIS FIRM.

31.    Before the accusations against HARDWICK were made public, he entered into a conspiracy with his fellow partners, M. WITTSTADT and G. WITTSTADT to use the firm's clients and HARDWICK'S business contacts to misappropriate their money under false pretenses to fund THE MORRIS FIRM'S operations.

32.     HARDWICK, M. WITTSTADT and G. WITTSTADT intended to and have threatened to use confidential information they obtained as Mr. Johnson's attorneys to extort and dissuade Mr. Johnson from seeking to recover  his hard-earned money.

33.     The intended purpose of the conspiracy and scheme was to replace money in THE MORRIS FIRM'S deficient accounts to directly benefit HARDWICK, M. WITTSTADT and G. WITTSTADT, and attempt to cover up the fact that they and the firm had misappropriated and mismanaged client assets.

34.     JOHNSON was a direct and intended target of this scheme.

35.     In or around the end of July 2014 or beginning of August 2014, HARDWICK approached JOHNSON to request that JOHNSON invest Three Million Dollars ($3,000,000.00) in what HARDWICK represented was "a very good investment", and HARDWICK promised that THE MORRIS FIRM would repay JOHNSON Four Million Dollars ($4,000,000.00) in equal monthly payments of One Hundred Thirty Three Thousand, Three Hundred Thirty Three Dollars, and Thirty Three Cents ($133,333.33) over 30 months, representing a guaranteed return on the loan of Twelve Percent (12%) per annum.

36.   As a further inducement for JOHNSON to invest and loan the money, HARDWICK represented to JOHNSON that THE MORRIS FIRM agreed to execute a Promissory Note, with the firm as the Borrower, and JOHNSON as the Lender, on terms that required THE MORRIS FIRM to repay JOHNSON Four Million Dollars ($4,000,000.00) in equal monthly payments of One Hundred Thirty Three Thousand, Three Hundred Thirty Three Dollars, and Thirty Three Cents ($133,333.33) over 30 months, representing a guaranteed return on the loan of Twelve Percent (12%) per annum.

37.   As a further inducement for JOHNSON to invest and loan the money, HARDWICK represented to JOHNSON that the loan could potentially be paid back early, and if it was, the full initial investment plus the Twelve Percent (12%) return, amounting to Four Million Dollars ($4,000,000.00), would be paid to JOHNSON notwithstanding such early repayment.

38.   As a further inducement for JOHNSON to invest and loan the money, HARDWICK represented to JOHNSON that the repayment of the loan would be guaranteed by THE MORRIS CORPORATION, the parent company of THE MORRIS FIRM, as well as, its owners, officers and directors, HARDWICK, M. WITTSTADT and G. WITTSTADT.

14

39.    As a further inducement for JOHNSON to invest and loan the money, HARDWICK represented to JOHNSON that THE MORRIS CORPORATION, agreed to execute an unconditional Guaranty, with the corporation and its owners, officers and directors as the Guarantors of THE MORRIS FIRM'S obligation to repay the full amount of the loan and investment.

40.    As a further inducement for JOHNSON to invest and loan the money, HARDWICK represented to JOHNSON that HARDWICK was making a similar investment on terms identical to the terms he was offering to JOHNSON.

41.    As a further inducement for JOHNSON to invest and loan the money, HARDWICK represented to JOHNSON that besides HARDWICK, another individual had committed to making the same investment on terms substantially similar as the terms being offered to JOHNSON.

42.    Upon information and belief, the other individual is James Pritchard. (Copies of the Promissory Note and Guaranty documents relating to an investment and loan transaction with James Pritchard are attached hereto as **Exhibit 1**.)

43.    As a further inducement for JOHNSON to invest and loan the money, HARDWICK represented to JOHNSON that both the Promissory Note and Guaranty containing the terms promised by HARDWICK to JOHNSON had been

executed by THE MORRIS FIRM and THE MORRIS CORPORATION, respectively.

44.    As a further inducement for JOHNSON to invest and loan the money, HARDWICK represented to JOHNSON that he sent the executed Promissory Note and Guaranty to Roy Adams, the financial advisor for both HARDWICK and JOHNSON, to be maintained in JOHNSON'S files.

45.    HARDWICK made each and every one of the aforesaid representations and promises to JOHNSON as part of a conspiracy, in HARDWICK'S individual capacity, in his capacity as the CEO, a duly authorized agent and employee of THE MORRIS CORPORATION, in his capacity as the Managing Partner, a duly authorized agent and employee of THE MORRIS FIRM, and in his capacity as a duly authorized agent of M. WITTSTADT and G. WITTSTADT, with the knowledge, actual or constructive, and the authorization, express or implied, of M. WITTSTADT and G. WITTSTADT.

46.    At all relevant times, JOHNSON believed HARDWICK had the authority to act and legally bind THE MORRIS CORPORATION, THE MORRIS FIRM, and THE WITTSTADTS.

16

47.    JOHNSON relied on the representations and promises made by his lawyer and fiduciary, HARDWICK.

48.    JOHNSON believed it was reasonable to rely on the representations and promises made by his lawyer and fiduciary, HARDWICK.

49.    JOHNSON'S reliance was to his detriment because he invested and loaned the Three Million Dollars ($3,000,000.00) to THE MORRIS FIRM based on such representations and promises and to date, no required payments have been forthcoming to him.

50.    As JOHNSON'S attorneys, all Defendants, jointly and severally, had the ethical obligation, pursuant to both the Georgia Rules of Professional Conduct, Rule 1.8, and the Maryland Lawyer's Rules of Professional Responsibility, Rule 1.8, to fully advise JOHNSON, in writing, on (a) all of the essential terms of the business transaction; (b) the advisability of JOHNSON retaining separate legal counsel to review the terms of the business transaction and advise JOHNSON thereon; and (c) the fact that all Defendants, as his attorneys, were required to obtain JOHNSON'S informed written consent describing the essential terms of the business transaction, the lawyers' role in the transaction, and whether the lawyers

were representing JOHNSON in the transaction.  None of this was done either deliberately, or in error or omission.

51.   Notwithstanding the ethical and fiduciary duty to disclose all of the truthful material circumstances surrounding the investment and loan, and all of the requirements of Rule 1.8, HARDWICK concealed from JOHNSON that:

> A.   THE MORRIS FIRM had accused HARDWICK of unauthorized withdrawals from THE MORRIS FIRM'S financial accounts that resulted in the allegation that HARDWICK had embezzled as much as Thirty Million Dollars ($30,000,000.00) from THE MORRIS FIRM'S financial accounts;

> B.   The money from JOHNSON was not for a "really good investment" but rather was being used by HARDWICK to replace funds in THE MORRIS FIRM'S escrow accounts and to fund THE MORRIS FIRM'S day-to-day operations;

> C.   HARDWICK'S relationship with THE MORRIS FIRM was such that he was at risk of being

18

terminated by THE MORRIS FIRM and THE MORRIS CORPORATION;

D.    HARDWICK had retained legal counsel to represent his interests in connection with the accusations and his relationship with THE MORRIS FIRM;

E.    HARDWICK lacked the personal funds to make the same investment he was offering to JOHNSON; and

F.    The investment from JOHNSON was being solicited by HARDWICK to minimize HARDWICK'S, M. WITTSTADT'S and G. WITTSTADT'S personal liability to THE MORRIS FIRM, THE MORRIS CORPORATION and to other entities and to fund THE MORRIS FIRM'S day-to-day operations.

52.    HARDWICK concealed the aforementioned material facts from JOHNSON either deliberately, or in error or omission.

53.    JOHNSON did not know, and could not have known these concealed material facts independently of the Defendants, and each of them.

19

54.     JOHNSON could not have discovered these concealed material facts from any source other than the Defendants, and each of them.

55.     If these concealed material facts were disclosed to JOHNSON, he would not have made the investment or loan.

56.     All Defendants, jointly and severally, had the duty to honestly disclose all material facts relating to the business transaction by virtue of their position of trust and confidence as attorneys and fiduciaries for JOHNSON, thereby excusing JOHNSON from conducting an independent investigation to discover the concealed facts.

57.     JOHNSON, relying on HARDWICK'S aforementioned representations and promises, told HARDWICK he would make the investment and loan.

58.     On August 5, 2014, HARDWICK provided wiring instructions to JOHNSON in an e-mail from his account at THE MORRIS FIRM, reflecting the address of the firm, HARDWICK'S contact information, along with his title, CEO and Managing Partner, Morris Hardwick Schneider, LLC.  Use of HARDWICK'S e-mail from his account at THE MORRIS FIRM provided JOHNSON with an additional assurance that the transaction was being undertaken by THE MORRIS FIRM in the manner described by HARDWICK.

20

59.    HARDWICK instructed JOHNSON to wire his investment to THE MORRIS FIRM'S "Equity Partners Account" ██████1377.

60.    On August 6, 2014, JOHNSON sent an e-mail to his bank, directing and authorizing a wire transfer to THE MORRIS FIRM'S "Equity Partners Account" ██████1377 located in the State of Georgia, as instructed by HARDWICK.

61.    On August 6, 2014, JOHNSON'S bank completed a wire transfer of Three Million Dollars ($3,000,000.00) of JOHNSON'S funds to THE MORRIS FIRM'S "Equity Partner Account" ██████1377 located in the State of Georgia.  (A copy of the wire transfer confirmation is attached as **Exhibit 2**.)

62.    On or about August 27, 2014, various news reports indicated HARDWICK was accused of embezzling Thirty Million Dollars ($30,000,000.00) from THE MORRIS FIRM and was removed as Managing Partner and fired by the firm.

63.    HARDWICK denied all of the accusations against him and represented to JOHNSON that the Three Million Dollar ($3,000,000.00) loan was safe at THE MORRIS FIRM, primarily because the firm had sufficient liquidity to fulfill its obligations under the Promissory Note, and additionally, because the loan was guaranteed by THE MORRIS CORPORATION, HARDWICK, M. WITTSTADT and G. WITTSTADT.

64.     HARDWICK further represented to JOHNSON that payments would be made in due course and the full Four Million Dollars ($4,000,000.00) would be paid to JOHNSON.

65.     JOHNSON relied on these additional representations and promises made by his lawyer and fiduciary, HARDWICK.

66.     JOHNSON believed it was reasonable to rely on these additional representations and promises made by his lawyer and fiduciary, HARDWICK.

67.     JOHNSON'S reliance was to his detriment because no required payments have been forthcoming to him.

68.     To date, THE MORRIS FIRM has not made any of the monthly payments required by the terms of the Promissory Note on the loan, and HARDWICK'S promise that the firm would do so.

69.     Pursuant to the terms of the Promissory Note, failure to make any monthly payment is an event of default which triggers acceleration of the full Four Million Dollar ($4,000,000.00) amount of the loan and interest.

70.     On October 14, 2014, JOHNSON sent written notice of default and demand for payment to THE MORRIS FIRM for failure to make required monthly payments on the loan.  JOHNSON exercised the acceleration clause and demanded

payment of principal and interest in the amount of Four Million Dollars ($4,000,000.00), all of which is authorized by the terms of the Promissory Note, as represented by HARDWICK.  (A copy of the notice is attached as **Exhibit 3**.)

71.    THE MORRIS FIRM refused to pay.

72.    On October 14, 2014, JOHNSON sent written notice of default and demand for payment to THE MORRIS CORPORATION, along with a copy of the notice of default and demand for payment sent to THE MORRIS FIRM.  JOHNSON notified THE MORRIS CORPORATION he exercised the acceleration clause in the Promissory Note and demanded payment of principal and interest in the amount of Four Million Dollars ($4,000,000.00) from THE MORRIS CORPORATION, as Guarantor of the Promissory Note.  (A copy of the notice is attached as **Exhibit 4**.)

73.    THE MORRIS CORPORATION refused to pay.

74.    JOHNSON has performed all necessary acts pursuant to the terms of the Promissory Note and the Guaranty, and all applicable laws, prior to filing this Complaint.

75.    In response to JOHNSON'S notice of default and demand to be repaid his money, THE MORRIS FIRM, M. WITTSTADT and G. WITTSTADT admitted

the money was not for "a really good investment" rather it was to "fund firm operations."

76.     In response to JOHNSON'S demands to be repaid his money, THE MORRIS FIRM, M. WITTSTADT and G. WITTSTADT threatened to disclose private and confidential information about JOHNSON, which was learned by them in the course of their representation of him as his attorneys, should he take any further action to seek repayment of the money.

77.     In response to JOHNSON'S demands to be repaid his money, THE MORRIS FIRM, M. WITTSTADT and G. WITTSTADT threatened to entangle JOHNSON in protracted litigation for years if he attempted to reclaim his money through a lawsuit.

78.     In response to JOHNSON'S demands to be repaid his money, THE MORRIS FIRM, M. WITTSTADT and G. WITTSTADT represented to JOHNSON that they were not his attorneys.

<u>**COUNT ONE (FEDERAL RICO VIOLATIONS –**</u>
<u>**AGAINST ALL DEFENDANTS)**</u>

79.     JOHNSON hereby realleges and incorporates all allegations of Parties, Jurisdiction, and Venue, and all Factual Allegations stated above as though set forth herein.

24

80.     It is illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . ." 18 U.S.C. § 1962(c).

81.     18 U.S.C. § 1964(c) permits a civil action if a person is injured due to another person's violation of § 1962.

82.     All Defendants herein participated in a scheme to fraudulently induce their clients and business contacts to give substantial sums of money to THE MORRIS FIRM as a misrepresented "loan" when there was never any intent to repay the money to the targets.

83.     All Defendants participated in a scheme to threaten extortion against their targets to reveal private and confidential information about the targets if the targets attempt to reclaim their money.

84.     All Defendants participated in the aforementioned activities as part of a joint enterprise to engage in racketeering against their targets.

85.     JOHNSON was an intended target and he has suffered monetary injury directly by reason of the aforementioned predicate acts as defined by 18 U.S.C. § 1961(1), including but not limited to fraud, theft, and wire fraud.

86. JOHNSON is aware of at least one other target, James Pritchard, who was also a victim of the same pattern of predicate acts engaged in by all Defendants.

87. JOHNSON is entitled to the recovery of damages, including all compensatory and punitive damages, treble damages, and costs and attorney's fees.

## COUNT TWO (FEDERAL RICO CONSPIRACY VIOLATIONS – AGAINST ALL DEFENDANTS)

88. JOHNSON hereby realleges and incorporates all allegations of Parties, Jurisdiction, and Venue, and all Factual Allegations stated above as though set forth herein.

89. It is illegal "for any person to conspire to violate any of the provisions of 18 U.S.C. § 1962(c).  18 U.S.C. § 1962(d).

90. 18 U.S.C. § 1964(c) permits a civil action if a person is injured due to another person's violation of § 1962.

91. All Defendants herein participated in a conspiracy to fraudulently induce their clients and business contacts to give substantial sums of money to THE MORRIS FIRM as a misrepresented "loan" when there was never any intent to repay the money to the targets.

92.   All Defendants participated in a conspiracy to threaten extortion against their targets to reveal private and confidential information about the targets if the targets attempt to reclaim their money.

93.   All Defendants participated in the aforementioned activities as part of a joint enterprise to engage in racketeering against their targets.

94.   JOHNSON was an intended target and he has suffered monetary injury directly by reason of the aforementioned predicate acts as defined by 18 U.S.C. § 1961(1), including but not limited to fraud, theft, and wire fraud.

95.   JOHNSON is aware of at least one other target, James Pritchard, who was also a victim of the same conspiracy and pattern of predicate acts engaged in by all Defendants.

96.   JOHNSON is entitled to the recovery of damages, including all compensatory and punitive damages, treble damages, and costs and attorney's fees.

## COUNT THREE (GEORGIA RICO VIOLATIONS – AGAINST ALL DEFENDANTS)

97.   JOHNSON hereby realleges and incorporates all allegations of Parties, Jurisdiction, and Venue, and all Factual Allegations stated above as though set forth herein.

98.    It is illegal for "any person, through a pattern of racketeering activities or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property or personal property of any nature, including money."  O.C.G.A. §16-14-4(a).

99.    O.C.G.A. §16-14-6 permits a civil action if a person is injured due to another person's violation of the Georgia RICO statute.

100.   All Defendants herein participated in a scheme to fraudulently induce their clients and business contacts to give substantial sums of money to THE MORRIS FIRM as a misrepresented "loan" when there was never any intent to repay the money to the targets.

101.   All Defendants participated in a scheme to threaten extortion against their targets to reveal private and confidential information about the targets if the targets attempt to reclaim their money.

102.   All Defendants participated in the aforementioned activities as part of a joint enterprise to engage in racketeering against their targets.

103.   JOHNSON was an intended target and he has suffered monetary injury directly by reason of the aforementioned predicate acts as defined by O.C.G.A §16-14-3, including but not limited to fraud, theft by deception, and wire fraud.

28

104.   JOHNSON is aware of at least one other target, James Pritchard, who was also a victim of the same scheme and pattern of predicate acts engaged in by all Defendants.

105.   JOHNSON is entitled to the recovery of damages, including all compensatory and punitive damages, treble damages, and costs and attorney's fees. attorney's fees.

### COUNT FOUR (GEORGIA RICO CONSPIRACY VIOLATIONS – AGAINST ALL DEFENDANTS)

106.   JOHNSON hereby realleges and incorporates all allegations of Parties, Jurisdiction, and Venue, and all Factual Allegations stated above as though set forth herein.

107.   It is illegal for "any person to conspire or endeavor to violate any of the provisions of [O.C.G.A. §16-14-4(a)]."   O.C.G.A. §16-14-4(c).

108.   O.C.G.A. §16-14-6 permits a civil action if a person is injured due to another person's violation of the Georgia RICO statute.

109.   All Defendants herein participated in a conspiracy to fraudulently induce their clients and business contacts to give substantial sums of money to THE MORRIS FIRM as a misrepresented "loan" when there was never any intent to repay the money to the targets.

29

110.   All Defendants participated in a conspiracy to threaten extortion against their targets to reveal private and confidential information about the targets if the targets attempt to reclaim their money.

111.   All Defendants participated in the aforementioned activities as part of a joint enterprise to engage in racketeering against their targets.

112.   JOHNSON was an intended target and he has suffered monetary injury directly by reason of the aforementioned predicate acts as defined by O.C.G.A §16-14-3, including but not limited to fraud, theft by deception, and wire fraud.

113.   JOHNSON is aware of at least one other target, James Pritchard, who was also a victim of the same conspiracy and pattern of predicate acts engaged in by all Defendants.

114.   JOHNSON is entitled to the recovery of damages, including all compensatory and punitive damages, treble damages, and costs and attorney's fees.

## COUNT FIVE (FEDERAL WIRE FRAUD VIOLATIONS – AGAINST ALL DEFENDANTS)

115.   JOHNSON hereby realleges and incorporates all allegations of Parties, Jurisdiction, and Venue, and all Factual Allegations stated above as though set forth herein.

116.  It is illegal for any person to devise a scheme or artifice to defraud, or for obtaining money or property by means of false pretenses, representations or promises, to transmit or cause to be transmitted by means of a wire, any writings or communications for the purpose of executing such scheme or artifice.  18 U.S.C. § 1343.

117.  All Defendants voluntarily and intentionally devised and participated in a scheme to defraud JOHNSON out of money.

118.  All Defendants engaged in the activity with the intent to defraud JOHNSON.

119.  It was reasonably foreseeable to all Defendants the interstate wire communications would be used to conduct the fraudulent activities.

120.  Interstate wire communications were in fact used to defraud JOHNSON.

121.  All Defendants herein participated in a conspiracy to fraudulently induce their clients and business contacts to give substantial sums of money to THE MORRIS FIRM as a misrepresented "loan" when there was never any intent to repay the money to the targets.

122.  All Defendants participated in a conspiracy to threaten extortion against their targets to reveal private and confidential information about the targets if the targets attempt to reclaim their money.

123.   JOHNSON was an intended target and he has suffered monetary injury directly by reason of the wire fraud.

124.   JOHNSON is entitled to the recovery of damages, including all compensatory and punitive damages, and costs and attorney's fees.

## COUNT SIX (BREACH OF WRITTEN CONTRACT – AGAINST DEFENDANT THE MORRIS FIRM)

125.   JOHNSON hereby realleges and incorporates all allegations of Parties, Jurisdiction, and Venue, and all Factual Allegations stated above as though set forth herein.

126.   JOHNSON had a valid and binding written contract with THE MORRIS FIRM as set forth in the Promissory Note executed on or about August 5, 2014.

127.   JOHNSON has performed all necessary acts pursuant to the terms of the Promissory Note, and loaned the agreed to Three Million Dollars ($3,000,000.00) to THE MORRIS FIRM on August 6, 2014.

128.   THE MORRIS FIRM has breached the contract by failing to make required monthly payments and has refused to make any payment whatsoever to JOHNSON on the loan.

129.   JOHNSON duly exercised his rights under the terms of the Promissory Note to provide THE MORRIS FIRM written notice of default and demand for payment,

with an opportunity to cure, and has accelerated the loan to the full amount due and owing of Four Million Dollars ($4,000,000.00).

130.   By reason of THE MORRIS FIRMS'S failure and refusal to make payment, JOHNSON has been damaged and is entitled to payment of Four Million Dollars ($4,000,000.00), plus interest, costs and attorney's fees from THE MORRIS FIRM.

## COUNT SEVEN (BREACH OF CONTRACT – AGAINST DEFENDANTS THE MORRIS CORPORATION, HARDWICK, M. WITTSTADT AND G. WITTSTADT)

131.   JOHNSON hereby realleges and incorporates all allegations of Parties, Jurisdiction, and Venue, and all Factual Allegations stated above as though set forth herein.

132.   JOHNSON had a valid and binding written contract with THE MORRIS CORPORATION, HARDWICK, M. WITTSTADT, and G. WITTSTADT as set forth in the Guaranty executed on or about August 5, 2014.

133.   JOHNSON has performed all necessary acts pursuant to the terms of the Promissory Note and Guaranty, and loaned the agreed to Three Million Dollars ($3,000,000.00) to THE MORRIS FIRM on August 6, 2014.

134.  THE MORRIS FIRM breached the Promissory Note by failing to make required monthly payments and has refused to make any payment whatsoever to JOHNSON on the loan.

135.  JOHNSON duly exercised his rights under the terms of the Promissory Note to provide THE MORRIS FIRM written notice of default and demand for payment, with an opportunity to cure, and has accelerated the loan to the full amount due and owing of Four Million Dollars ($4,000,000.00).

136.  As a result of THE MORRIS FIRM'S default on the loan, the Guaranty obligates THE MORRIS CORPORATION, HARDWICK, M. WITTSTADT, and G. WITTSTADT to pay JOHNSON the full amount due and owing of Four Million Dollars ($4,000,000.00).    JOHNSON provided THE MORRIS CORPORATION with written notice of default and demand for payment, with an opportunity to cure.

137.  By reason of Guarantors' failure and refusal to make payment, JOHNSON has been damaged and is entitled to payment of Four Million Dollars ($4,000,000.00), plus interest, costs and attorney's fees from THE MORRIS CORPORATION, HARDWICK, M. WITTSTADT and G. WITTSTADT.

## COUNT EIGHT (BREACH OF ORAL/IMPLIED CONTRACT – AGAINST ALL DEFENDANTS)

138.  JOHNSON hereby realleges and incorporates all allegations of Parties, Jurisdiction, and Venue, and all Factual Allegations stated above as though set forth herein.

83.  JOHNSON had a valid and binding oral and implied contract with THE MORRIS FIRM, THE MORRIS CORPORATION, HARDWICK, M. WITTSTADT, and G. WITTSTADT, based on promises and representations HARDWICK made to JOHNSON in his individual capacity; in his capacity as the CEO, a duly authorized agent and employee of THE MORRIS CORPORATION; and in his capacity as the Managing Partner, a duly authorized agent and employee of THE MORRIS FIRM, with the knowledge, actual or constructive, and the authorization, express or implied, of M. WITTSTADT and G. WITTSTADT, that HARDWICK, THE MORRIS FIRM, THE MORRIS CORPORATION, M. WITTSTADT, and G. WITTSTADT, individually and collectively, would repay JOHNSON Four Million Dollars ($4,000,000.00), and make monthly payments of One Hundred Thirty Three Thousand, Three Hundred Thirty Three Dollars, and Thirty Three Cents ($133,333.33) for Thirty (30) months, if JOHNSON would loan THE MORRIS FIRM Three Million Dollars ($3,000,000.00).

35

84. JOHNSON has performed all necessary acts pursuant to the terms of the contract, and loaned the agreed to Three Million Dollars ($3,000,000.00) to THE MORRIS FIRM on August 6, 2014.

85. THE MORRIS FIRM breached the contract by failing to make required monthly payments and has refused to make any payment whatsoever to JOHNSON on the loan.

86. JOHNSON duly exercised his rights under the terms of the contract to provide THE MORRIS FIRM written notice of default and demand for payment, with an opportunity to cure, and has accelerated the loan to the full amount due and owing of Four Million Dollars ($4,000,000.00).

87. As Guarantors, THE MORRIS CORPORATION, and its owners, officers and directors, HARDWICK, M. WITTSTADT and G. WITTSTADT breached the contract by failing to pay JOHNSON the full amount due and owing of Four Million Dollars ($4,000,000.00), following default by THE MORRIS FIRM.

88. JOHNSON provided THE MORRIS CORPORATION, HARDWICK, M. WITTSTADT and G. WITTSTADT with written notice of default and demand for payment, with an opportunity to cure.

36

89.   By reason of all Defendants' failure and refusal to make payment, JOHNSON has been damaged and is entitled to payment of Four Million Dollars ($4,000,000.00), plus interest, costs and attorney's fees from all Defendants, jointly and severally.

### COUNT NINE (FRAUD – AGAINST ALL DEFENDANTS)

90.   JOHNSON hereby realleges and incorporates all allegations of Parties, Jurisdiction, and Venue, and all Factual Allegations stated above as though set forth herein.

91.   In order to induce JOHNSON to make the investment and loan to THE MORRIS FIRM, HARDWICK made representations, identified above and fully incorporated herein, to JOHNSON which HARDWICK knew were false.

92.   HARDWICK made the representations to JOHNSON on his own behalf, and on behalf of THE MORRIS FIRM, THE MORRIS CORPORATION, M. WITTSTADT and G. WITTSTADT, as a duly authorized agent and employee, with their full knowledge, actual or constructive, and their full authorization, express or implied.

93.   HARDWICK intended for JOHNSON to rely on the representations.

94.    JOHNSON did in fact rely on HARDWICK'S statements and believed them to be true as inducements to invest and loan the money to THE MORRIS FIRM.

95.    Additionally, HARDWICK concealed material information from JOHNSON, identified above in the Factual Allegations, and fully incorporated herein.

96.    HARDWICK knew he had an obligation to reveal the concealed material information to JOHNSON and knowingly refused to do so.

97.    JOHNSON did not know, and could not have known these concealed material facts independently of the Defendants, and each of them.

98.    JOHNSON could not have discovered these concealed material facts from any source other than the Defendants, and each of them.

99.    If these concealed material facts were disclosed or known to JOHNSON, he would not have made the investment and loan.

100.   All Defendants, and each of them, had the duty to honestly disclose all material facts relating to the business transaction by virtue of their position of trust and confidence as attorneys and fiduciaries for JOHNSON, thereby excusing JOHNSON from conducting an independent investigation to discover the concealed facts.

101.   HARDWICK concealed material information from JOHNSON on his own behalf, and on behalf of THE MORRIS FIRM, THE MORRIS CORPORATION, M. WITTSTADT and G. WITTSTADT, as a duly authorized agent and employee, with their full knowledge, actual or constructive, and their full authorization, express or implied.

102.   As a result of the false statements and concealment by HARDWICK, JOHNSON has been damaged in the amount of Four Million Dollars ($4,000,000.00), plus interest, costs and attorney's fees, and punitive damages against all Defendants, jointly and severally.

## COUNT TEN (BREACH OF FIDUCIARY DUTY – AGAINST ALL DEFENDANTS)

103.   JOHNSON hereby realleges and incorporates all allegations of Parties, Jurisdiction, and Venue, and all Factual Allegations stated above as though set forth herein.

104.   All Defendants, and each of them, owed JOHNSON a fiduciary duty to use trust, utmost care, good faith, honesty, and professionalism to serve and protect JOHNSON'S interests as his legal counsel.

105.  All Defendants, and each of them, breached their fiduciary duty to JOHNSON by engaging in the fraud, misrepresentations, acts and omissions identified above and fully incorporated herein.

106.  All Defendants, and each of them, exerted undue influence over JOHNSON such that they substituted their own will for his own.

107.  The exercise of undue influence exerted over JOHNSON by all Defendants, and each of them, makes the investment, loan and contracts voidable.

108.  JOHNSON has been damaged directly by the aforementioned breaches in the amount of Four Million Dollars ($4,000,000.00), plus interest, costs and attorney's fees, and punitive damages against all Defendants, jointly and severally.

## COUNT ELEVEN (NEGLIGENCE PER SE – AGAINST ALL DEFENDANTS)

109.  JOHNSON hereby realleges and incorporates all allegations of Parties, Jurisdiction, and Venue, and all Factual Allegations stated above as though set forth herein.

110.  As JOHNSON'S attorneys, all Defendants, jointly and severally, had the ethical obligation, pursuant to both the Georgia Rules of Professional Conduct, Rule 1.8, and the Maryland Lawyer's Rules of Professional Responsibility, Rule 1.8, to fully advise JOHNSON, in writing, on (a) all of the essential terms of the

business transaction; (b) the advisability of JOHNSON retaining separate legal counsel to review the terms of the business transaction and advise JOHNSON thereon; and (c) the fact that all Defendants, as his attorneys, were required to obtain JOHNSON'S informed written consent describing the essential terms of the business transaction, the lawyers' role in the transaction, and whether the lawyers were representing JOHNSON in the transaction.

111.   All Defendants failed to comply with these ethical and regulatory duties.

112.   All Defendants breached their ethical and regulatory duty to JOHNSON and directly caused him they type of harm the regulations were intended to protect against.

113.    JOHNSON has been damaged directly by the breaches in the amount of Four Million Dollars ($4,000,000.00), plus interest, and costs.

### COUNT TWELVE (NEGLIGENCE – AGAINST DEFENDANTS THE MORRIS CORPORATION, THE MORRIS FIRM, M. WITTSTADT AND G. WITTSTADT)

114.   JOHNSON hereby realleges and incorporates all allegations of Parties, Jurisdiction, and Venue, and all Factual Allegations stated above as though set forth herein.

115.   THE MORRIS CORPORATION, THE MORRIS FIRM, M. WITTSTADT and G. WITTSTADT employed HARDWICK as their agent for the purpose of securing the investment from JOHNSON.

116.   HARDWICK acted within the scope of his agency for THE MORRIS CORPORATION, THE MORRIS FIRM, M. WITTSTADT and G. WITTSTADT when he made the false representations referred to herein and incorporated herein by this reference, concealed the material facts referred to herein and incorporated herein by this reference, and fraudulently secured the investment and loan from JOHNSON.

117.   THE MORRIS CORPORATION, THE MORRIS FIRM, M. WITTSTADT and G. WITTSTADT are bound for the care and loyalty of their agent, HARDWICK, in their business and are bound for the neglect and fraud of their agent, HARWICK, in the transaction of such business.

118.   Beyond a general and ongoing duty to properly and reasonably supervise the activities of HARDWICK, upon learning from HARDWICK that HARDWICK intended to solicit a loan from JOHNSON, THE MORRIS CORPORATION, THE MORRIS FIRM, M. WITTSTADT and G. WITTSTADT owed JOHNSON a special duty to properly and reasonably supervise the activities of HARDWICK,

42

their CEO and Managing Partner, respectively, and to ensure HARDWICK performed his duties in a reasonable, professional, and non-fraudulent manner.

119.   Upon learning that JOHNSON had transferred the amount of Three Million Dollars ($3,000,000.00) by wire to THE MORRIS FIRM'S "Equity Partners Account" ██████1377, THE MORRIS CORPORATION, THE MORRIS FIRM, M. WITTSTADT and G. WITTSTADT owed JOHNSON a duty to inquire into the activities of HARDWICK, their CEO and Managing Partner, respectively, and to ensure HARDWICK had performed his duties in a reasonable, professional, and non-fraudulent manner.

120.   THE MORRIS CORPORATION, THE MORRIS FIRM, M. WITTSTADT and G. WITTSTADT breached their duty to JOHNSON by allowing HARDWICK to make false representations, and conceal required material information from JOHNSON, as identified above and fully incorporated herein, and by not taking reasonable steps to prevent HARDWICK from acting in such a manner.

121.   THE MORRIS CORPORATION, THE MORRIS FIRM, M. WITTSTADT and G. WITTSTADT have benefitted directly from their negligent supervision of HARDWICK and negligent failure to inquire into HARDWICK'S conduct to the

extent that JOHNSON'S Three Million Dollars ($3,000,000.00) has been used to fund the THE MORRIS FIRM'S day-to-day operations.

122.  JOHNSON has been damaged directly by the breaches in the amount of Four Million Dollars ($4,000,000.00), plus interest, and costs.

## COUNT THIRTEEN (MONEY HAD AND RECEIVED – AGAINST ALL DEFENDANTS)

123.  JOHNSON hereby realleges and incorporates all allegations of Parties, Jurisdiction, and Venue, and all Factual Allegations stated above as though set forth herein.

124.  On August 6, 2014, JOHNSON authorized a wire transfer of Three Million Dollars ($3,000,000.00) of his funds to THE MORRIS FIRM'S "Equity Partner Account" ███████1377, at the direction of HARDWICK and based on HARDWICK'S false representations of material facts, concealment of material facts, and his fraudulent conduct.

125.  HARDWICK acted within the scope of his agency for THE MORRIS CORPORATION, THE MORRIS FIRM, M. WITTSTADT and G. WITTSTADT when he made the false representations referred to herein and incorporated herein by this reference, concealed the material facts referred to herein and incorporated

herein by this reference, and fraudulently secured the investment and loan from JOHNSON.

126.   THE MORRIS CORPORATION, THE MORRIS FIRM, M. WITTSTADT and G. WITTSTADT are bound for the care and loyalty of their agent, HARDWICK, in their business and are bound for the neglect and fraud of their agent, HARWICK, in the transaction of such business.

127.   Based on the conduct of all Defendants as alleged above and fully incorporated herein, THE MORRIS FIRM is not entitled to continued possession of the Three Million Dollars ($3,000,000.00), and has a legal obligation to return the money to JOHNSON.

128.   JOHNSON has properly and lawfully demanded return of the money delivered to and received by THE MORRIS FIRM, which refuses to return the money.

129.   JOHNSON has been damaged directly by the refusal and is owed the amount of Three Million Dollars ($3,000,000.00), plus interest and costs.

## COUNT FOURTEEN (CONVERSION/TROVER – AGAINST ALL DEFENDANTS)

130.   JOHNSON hereby realleges and incorporates all allegations of Parties,

Jurisdiction, and Venue, and all Factual Allegations stated above as though set forth herein.

131.   On August 6, 2014, JOHNSON authorized a wire transfer of Three Million Dollars ($3,000,000.00) of his funds to THE MORRIS FIRM'S "Equity Partner Account" ██████1377, at the direction of HARDWICK and based on HARDWICK'S false representations referred to herein and incorporated herein by this reference, concealment of the material facts referred to herein and incorporated herein by this reference, and fraudulent conduct.

132.   HARDWICK acted within the scope of his agency for THE MORRIS CORPORATION, THE MORRIS FIRM, M. WITTSTADT and G. WITTSTADT when he made the made the false representations referred to herein and incorporated herein by this reference, concealed the material facts referred to herein and incorporated herein by this reference, and fraudulently secured the investment and loan from JOHNSON.

133.   THE MORRIS CORPORATION, THE MORRIS FIRM, M. WITTSTADT and G. WITTSTADT are bound for the care and loyalty of their agent, HARDWICK, in their business and are bound for the neglect and fraud of their agent, HARWICK, in the transaction of such business.

134. Based on the conduct of all Defendants as alleged above and fully incorporated herein, THE MORRIS FIRM is not entitled to continued possession of the Three Million Dollars ($3,000,000.00), and has a legal obligation to return the money to JOHNSON.

135. JOHNSON has properly and lawfully demanded return of the money delivered to and received by THE MORRIS FIRM, which refuses to return the money.

136. JOHNSON is entitled to rescission of any agreements procured by fraud which led the Defendants' wrongful possession of his funds, and JOHNSON is entitled to immediate recovery of the funds.

137. JOHNSON has been damaged directly by the refusal and is owed the amount of Three Million Dollars ($3,000,000.00), plus interest and costs.

## COUNT FIFTEEN (INJUNCTIVE RELIEF – AGAINST ALL DEFENDANTS)

138. JOHNSON hereby realleges and incorporates all allegations of Parties, Jurisdiction, and Venue, and all Factual Allegations stated above as though set forth herein.

139. An actual controversy exists between JOHNSON and all Defendants which requires immediate judicial intervention.

47

140. It is undisputed that JOHNSON wired Three Million Dollars ($3,000,000.00) of his own money to THE MORRIS FIRM.

141. It is undisputed that THE MORRIS FIRM received the Three Million Dollars ($3,000,000.00) from JOHNSON.

142. It is undisputed that THE MORRIS FIRM failed to make two (2) monthly payments on the Promissory Note, and has paid no money back to JOHNSON to date.

143. It is undisputed that the Defendants, and each of them, all failed to advise JOHNSON of THE MORRIS FIRM'S financial difficulty and the embezzlement allegations against HARDWICK before requesting and receiving the Three Million Dollar ($3,000,000.00) investment and loan from JOHNSON.

144. Accordingly, there is a substantial likelihood that JOHNSON will ultimately prevail on the merits of this case.

145. JOHNSON does not have an adequate remedy at law because Defendants obtained the Three Million Dollar ($3,000,000.00) investment and loan from JOHNSON through fraud.

146. Additionally, per O.C.G.A. §9-5-11, equity may enjoin Defendants as to transactions involving fraud.

147. JOHNSON is entitled to immediate and emergency injunctive relief in the form of a rescission of all oral and written contracts with THE MORRIS CORPORATION, THE MORRIS FIRM, AND HARDWICK, including the Promissory Note.

148. In connection with the rescission, JOHNSON prays for an injunction ordering THE MORRIS FIRM to immediately return the Three Million Dollars ($3,000,000.00), plus interest, costs and attorneys' fees.

149. In the alternative, JOHNSON prays for an injunction ordering THE MORRIS FIRM to place the Three Million Dollars ($3,000,000.00) into a constructive trust, in an identified separate escrow account, safe and unencumbered from any and all claims, liens and creditors outside of the Parties to this dispute, until such time as the rights of the Parties hereto have been adjudicated.

150. THE MORRIS FIRM has admitted to using JOHNSON'S Three Million Dollars ($3,000,000.00) to fund its day-to-day operations.  Therefore, upon information and belief, but for use of JOHNSON'S Three Million Dollars ($3,000,000.00), THE MORRIS FIRM is, or soon will be, insolvent.

151. Due the financial uncertainty of THE MORRIS FIRM, the recovery of JOHNSON'S Three Million Dollars ($3,000,000.00) likely dwindles with each day

that passes without repayment or other actions taken to preserve recovery.   As such, JOHNSON will suffer irreparable injury unless the injunction issues immediately.

152.  The threat of JOHNSON'S Three Million Dollars ($3,000,000.00) investment loss outweighs any damage the proposed injunction may cause the Defendants.

153.  The injunction, if issued, would not be adverse to the public interest.

## COUNT SIXTEEN (PUNITIVE DAMAGES – AGAINST ALL DEFENDANTS)

154.  JOHNSON hereby realleges and incorporates all allegations of Parties, Jurisdiction, and Venue, and all Factual Allegations stated above as though set forth herein.

155.  Defendants, and each of them, engaged in fraudulent and malicious conduct towards JOHNSON, and thereby acted with willful and wanton and/or conscious and reckless disregard for JOHNSON, entitling him to punitive damages.

156.  By reason of these facts, Defendants, and each of them, are jointly and severally liable for punitive damages.

## COUNT SEVENTEEN (CONTRACT DAMAGES ATTORNEY'S FEES – AGAINST ALL DEFENDANTS)

157.   JOHNSON hereby realleges and incorporates all allegations of Parties, Jurisdiction, and Venue, and all Factual Allegations stated above as though set forth herein.

158.   Pursuant to the Promissory Note and Guaranty, and O.C.G.A. §13-1-11, Defendants were notified that if Defendants fail to make payment in full of the entire accelerated principal and interest owed to JOHNSON within ten (10) days of the demand, then the attorney's fees provisions of the loan documents would be enforced.

159.   Defendants, and each of them, acted in bad faith with their fraudulent and negligent conduct thereby causing JOHNSON unnecessary trouble and expense, entitling him to attorney's fees.

160.   By reason of these facts and the attorney's fees clauses in the loan documents, Defendants, and each of them, are jointly and severally liable for JOHNSON'S attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, JOHNSON respectfully requests and prays for the following relief:

51

A.     That JOHNSON be awarded treble compensatory and punitive damages, including interest and reasonable costs and attorney's fees against all Defendants, jointly and severally, for violation of the Federal RICO Statute.

B.     That JOHNSON be awarded treble compensatory and punitive damages, including interest and reasonable costs and attorney's fees against all Defendants, jointly and severally, for violation of the Federal RICO Conspiracy Statute.

C.     That JOHNSON be awarded treble compensatory and punitive damages, including interest and reasonable costs and attorney's fees against all Defendants, jointly and severally, for violation of the Georgia RICO Statute.

D.     That JOHNSON be awarded treble compensatory and punitive damages, including interest and reasonable costs and attorney's fees against all

Defendants, jointly and severally, for violation of the Georgia RICO Conspiracy Statute.

E.     That JOHNSON be awarded compensatory and punitive damages, including interest and reasonable costs and attorney's fees against all Defendants, jointly and severally, for violation of the Federal Wire Fraud Statute.

F.     That JOHNSON be awarded all compensatory and other damages, including interest and reasonable costs and attorney's fees against all Defendants, jointly and severally, for breach of contract;

G.     That JOHNSON be awarded all compensatory and other damages, including interest, reasonable costs and attorney's fees, and punitive damages against all Defendants, jointly and severally, for fraud;

H.     That JOHNSON be awarded all compensatory and other damages, including interest, reasonable costs and attorney's fees, and punitive damages against all

53

Defendants, jointly and severally, for breach of fiduciary duty;

I.      That JOHNSON be awarded all compensatory and other damages, including interest and reasonable costs, against all Defendants, jointly and severally, for negligence per se;

J.      That JOHNSON be awarded all compensatory and other damages, including interest and reasonable costs, against Defendants THE MORRIS CORPORATION, THE MORRIS FIRM M. WITTSTADT, and G. WITTSTADT, jointly and severally, for negligence;

K.      That JOHNSON be awarded all compensatory and other damages, including interest and reasonable costs and attorney's fees, against all Defendants, jointly and severally, for money had and received;

L.      That JOHNSON be awarded all compensatory and other damages, including interest and reasonable

54

costs and attorney's fees, against all Defendants, jointly and severally, for conversion/trover;

M.   That the Court order an injunction to rescind the investment and loan, and all related contracts and order Defendants, and each of them, to immediately return JOHNSON'S Three Million Dollars ($3,000,000.00);

N.   That the Court order an injunction for a constructive trust to protect JOHNSON'S Three Million Dollars ($3,000,000.00), until the legal rights of the Parties are fairly adjudicated; and

O.   For such other relief as this Court finds just and equitable.

Respectfully submitted this 28th day of October, 2014.

GORDON REES
SCULLY MANSUKHANI LLP


/s/ Cecily J. McLeod
Cecily J. McLeod
Georgia State Bar No. 581858

55

Wm. David Cornwell, Sr.
Georgia State Bar No. 453018

The Pinnacle Building
3455 Peachtree Road, Suite 1500
Atlanta, GA 30326
Phone: (404) 869-9054
Email: cmcleod@gordonrees.com
         dcornwell@gordonrees.com

56