**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| DUSTIN JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. 1:14-CV-03457-LMM |
| MORRIS SCHNEIDER | ) | |
| WITTSTADT, LLC f/k/a MORRIS | ) | |
| HARDWICK SCHNEIDER, LLC; | ) | |
| MSLAW, INC. f/k/a MHSLAW, INC.; | ) | |
| NATHAN HARDWICK IV, ESQ.; | ) | |
| MARK WITTSTADT, ESQ.; | ) | |
| GERARD WM. WITTSTADT JR., ESQ., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THE WITTSTADT DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

Dustin Johnson's first wild theory, that his friend Nat Hardwick conspired

with the Wittstadt Defendants[1] to steal $3 million, was so ludicrous that he

abandoned it. Johnson's new yarn, that he and his friend are patsies in a complex,

serpentine fraud scheme, would be even more laughable but for the damage that

---

[1] Defendants Morris Schneider Wittstadt, LLC ("MSW"), MSWLaw, Inc. (improperly named MSLaw, Inc.), Mark Wittstadt and Gerard Wm. ("Rod") Wittstadt, Jr. are referred to collectively as the "Wittstadt Defendants."

such patently false allegations cause to the reputations of good lawyers who are, without any question, the true victims here.[2] Johnson's mulligan fares no better than his first whiff, and the Court should dismiss the Amended Complaint, in its entirety, as to each of the Wittstadt Defendants.

## I.   FACTUAL BACKGROUND[3]

Stripped of rhetoric and speculation, Johnson's allegations boil down to this: All based on what Nat Hardwick told him, without ever signing, or even seeing, a loan document of any kind, Dustin Johnson loaned Hardwick $3 million and wired

---

[2] Johnson incorporated into his new complaint the allegations from the MSW civil action against Hardwick that set forth the facts of the massive embezzlement perpetrated upon the Wittstadt Defendants (the "Embezzlement Complaint"). (R.12-1.) Investigation to date has confirmed that Hardwick misappropriated millions, upon millions, upon millions of dollars from MSW's accounts to pay, among others, casinos, private jet services, his personal company, and his ex-wife.

[3] On this motion, the Court should accept the truth of *facts* alleged in the Complaint but should not accept conclusory allegations, opinions, and legal conclusions. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009); *S. Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 408 n.10 (11th Cir. 1996). The Court should not "take as true allegations based merely 'upon information and belief.'" *See Smith v. City of Sumiton*, 578 F. App'x. 933, 935 n.4 (11th Cir. 2014) (quoting *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 551 (2007) (finding "ultimate allegations" asserted "upon information and belief" insufficient); *Websters Chalk Paint Powder, LLC v. Annie Sloan Interiors, Ltd*., No. 1:13-cv-2040, 2014 U.S. Dist. LEXIS 114663, at *31 (N.D. Ga. Aug. 18, 2014) (describing allegation "upon information and belief" as a "conclusory claim [that] is based on conjecture and speculation."). After excising speculation, unsupported conclusions, and innuendo, not much remains, and the Wittstadt Defendants do not admit that any of it is true.

the loan proceeds to an account identified by Hardwick. The account was at MSW and Johnson only can speculate as to what Hardwick might have told the Wittstadt Defendants regarding the money. From these simple facts, Johnson's lawyers spin a web worthy of John le Carre; no more accurate than any other fictional work.

Johnson conjectures that it was the Wittstadt Defendants, rather than Hardwick, who intended the loan to "be viewed as [a] personal loan[] made to Hardwick only." (Am. Compl., hereinafter "R.12," ¶ 14.)[4] In any event, like the "substantially similar" loan Johnson points to, his loan was to be with Hardwick. (*Id.*, ¶ 65, Ex. 3.) Johnson theorizes that the Hardwick loan proceeds were necessary to cover shortfalls in MSW's escrow account. (*Id.*, ¶ 9.)[5] Likewise, Johnson guesses that the original shortfall was believed to be $6.5 million but grew to tens of millions of dollars. (*See id.*, ¶¶ 9, 22, Ex. 1.)[6]

---

[4] This is entirely consistent with Hardwick's representations to the Wittstadts, in writing and orally, that the funds were his money—personally borrowed by him.

[5] As discussed below, the Amended Complaint's conclusory allegations are not sufficient to maintain the implausible claims asserted under the pleading standards articulated in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] Factual allegations incorporated by Johnson may be considered for this motion. *See LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). And, specific factual allegations contained in the Embezzlement Complaint govern over conclusory allegations of the Amended Complaint. *See Griffin Indus. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").

Johnson says that *Hardwick told him* that loan documents would include a promissory note providing for a $4 million return, and a guaranty by the Wittstadt Defendants. (*Id.*, ¶¶ 59–65.)[7] Rather than waiting for any such supposed documents,[8] Johnson says he simply wired $3 million to an account identified by his good friend. (*Id.*, ¶¶ 67–71.)

When Johnson learned that Hardwick was accused of embezzling $30 million from the Wittstadt Defendants, Hardwick denied wrongdoing. (*Id.*, ¶¶ 75–77; *see also* R.12-1, ¶¶ 10–15.) Despite the serious embezzlement allegations against Hardwick, despite having never seen any supposed guaranty from the Wittstadt Defendants, Johnson, resting only on the words of his buddy, believed that the "loan was safe . . . because the loan was guaranteed by the firm." (*Id.*, ¶ 76.) Johnson never alerted the Wittstadt Defendants to the supposed guaranty until his lawyer sent an October 14, 2014 letter demanding $4 million. (*Id.*, ¶¶ 80, 82.) Shortly thereafter, Johnson filed the original, now discredited, Complaint.

---

[7] Hardwick made assorted other representations regarding other investors and the status of alleged loan documents; none were made by the Wittstadt Defendants. (R.12, ¶¶ 64–66.)

[8] Having been called out for his prevarications regarding loan documents (*see* Wittstadt Defendants' Memorandum in Support of Motion to Dismiss, Docket No. 9-1 (incorporated herein by reference), at 15–16,) Johnson now conveniently asserts that the documents, which he never saw, have, like a ball shanked out of bounds, "gone missing." (R.12, ¶¶ 90, 97.)

Most of the remaining pleaded facts add flavor, but little else. Morris Schneider Wittstadt is a law firm engaged primarily in residential real estate closing and default services in Georgia and surrounding states. (R.12-1, ¶ 4.) MSWLaw, Inc. is "the parent company" of MSW. (R.12, ¶ 63.) Lawyers Mark and Rod Wittstadt own and manage MSW. (*Id.*, ¶¶ 51, 56.) Before being accused of embezzlement, Hardwick was a member of MSW's and MSWLaw's predecessors. (*Id.*, ¶¶ 46, 57.)

Everything else asserted by Johnson consists either of patently false and irrelevant "facts," or completely unsupported, inactionable, conclusory statements.[9] Examples of the former are false statements regarding the Wittstadt Defendants' response to Johnson's pre-suit $4 million demand and Johnson's conspiracy theory.[10] (*Id.*, ¶¶ 29, 86–88.) Examples of the latter are much too numerous and pervasive to recount here. Despite now having taken two strokes, Johnson can do no more than spout inflammatory accusation and irrational conjecture. Like its predecessor, the Amended Complaint is bereft of any facts showing the Wittstadt

---

[9] Importantly for the Court's analysis of this motion, nearly all of the allegations of "fact" related to the Wittstadt Defendants are made "upon information and belief." (*See, e.g.,* R.12, ¶¶ 3–20, 59, 67–73.) Such allegations need not, and should not, be taken as true. *See* note 3, *supra*.

[10] One must surmise that such falsehoods were included to attempt to purposely malign the Wittstadt Defendants and discourage them from defending this suit.

Defendants to be any more than victims of Hardwick's alleged misconduct.

## II.   ARGUMENT AND CITATION OF AUTHORITY

What rationally may be gleaned from Dustin Johnson's two different complaints in this action is that he misplaced trust in Nat Hardwick and is now out $3 million. Seeking recourse against his friend is one thing.[11] What is not acceptable is purposely abusing the Federal Court system to falsely accuse good, ethical lawyers of lies and conspiracies. Once again, the Wittstadt Defendants show the Court that throwing implausible, libelous accusations against the wall to see if they stick does not meet any acceptable pleading standard.

**A.   Johnson's Complaint Fails All Applicable Pleading Standards.**

The Court should dismiss the Complaint because it is a shotgun pleading and fails to state a claim under Federal Rules 8(a)(2) and 9(b).

1.   <u>Johnson's Amended Complaint is an impermissible shotgun pleading.</u>

Johnson's Amended Complaint remains a shotgun pleading that has no place in this Court. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126 (11th Cir. 2014) ("A defendant served with a shotgun complaint should move the district court to dismiss the complaint pursuant to Rule 12(b)(6)"). The Eleventh Circuit

---

[11] And aligning himself with Hardwick while incorporating the Embezzlement Complaint, raises serious questions as to Johnson's judgment and motive here.

6

has condemned shotgun pleadings "upwards of fifty times." *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 979 n.54 (11th Cir. 2008); *see also Paylor*, 748 F.3d at 1125 n.2.[12]

Shotgun pleadings are those which: (1) fail to specify the facts relevant to each claim, (2) assert claims against a number of defendants without specification, and (3) contain a plethora of baseless causes of action. *See* Hon. Emmett Ripley Cox, *Thirty-Two Years on the Federal Bench*, 99 FLA. L. REV. 1685, 1691–92 (2014). Johnson's Amended Complaint meets each of these criteria. First, the Amended Complaint's purported facts are contained in paragraphs 1–88, yet eight of the nine liability counts make no reference to these allegations.

Second, the Amended Complaint makes little "distinction among the [many] defendants charged, though geographic and temporal realities make plain that all of these defendants could not have participated in every act complained of." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). Johnson uses the generic terms "Defendants" or "all Defendants" in the Amended Complaint's

---

[12] "[A] defendant faced with a [shotgun] complaint . . . is not expected to frame a responsive pleading." *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). Instead, "[a] defendant served with a shotgun complaint should move the district court to dismiss the complaint pursuant to Rule 12(b)(6)." *Paylor*, 748 F.3d at 1126. Or, "the court, acting *sua sponte* should [strike] the plaintiff's complaint." *Anderson*, 77 F.3d at 367 n.5.

allegations no fewer than 33 times. Johnson employs another shotgun pleading trick for most of his factual allegations: he indiscriminately lumps together the Wittstadt Defendants – two Georgia corporate entities and two individual Maryland lawyers. As a result, the Amended Complaint remains a shotgun pleading that should be dismissed with prejudice.[13]

      2.    <u>Johnson's Amended Complaint fails under Rule 12(b)(6).</u>

Johnson has not, and cannot, set forth "enough factual matter (taken as true) to suggest [each] required element" of each purported claim. *See Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quotation omitted). The Supreme Court condemned Johnson's technique when it held that pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.[14]

---

[13] "Plaintiffs file shotgun complaints and include frivolous claims to extort the settlement of a meritorious claim; worse yet, they file shotgun complaints to extort the settlement of unmeritorious claims." *Davis*, 516 F.3d at 982 (quotation omitted). "The result is a massive waste of judicial and private resources; moreover, the litigants suffer, and society loses confidence in the courts' ability to administer justice." *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998) (quotation omitted). This Court should recognize Johnson's shotgun Amended Complaint for what it is—an unmeritorious fiction designed to extort a settlement—and dismiss it with prejudice.

[14] "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation omitted). "The plausibility standard . . . asks for more than a sheer

Johnson again tees up claims resting entirely on labels and conclusions. (*See, e.g.*, R.12, ¶¶ 114, 116, 120–125, 127–129, 132 (outlining a formulaic recitation of the elements of fraud); *id.*, ¶¶ 134, 135, 139, 140 (breach of fiduciary duty); *id.*, ¶¶ 146-153 (negligence); *id.*, ¶¶ 156–160 (money had and received); *id.* ¶¶ 163–168 (conversion/trover).) Johnson's pattern of "formulaic recitations" infects all 11 counts and dooms each from the start. *Twombly*, 550 U.S. at 555, 570.

### 3.   Johnson Does Not Come Close to Satisfying Rule 9(b).

Johnson premises his Amended Complaint on the far-fetched notion that the Wittstadt Defendants duped the man who defrauded them out of tens of millions of dollars, just to defraud Johnson out of $3 million. Rule 9(b) nips this ridiculous hypothesis in the bud.

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Such particularity is required to ensure that defendants have fair notice of "the precise misconduct with which they are charged" and to safeguard defendants against "spurious charges of immoral and fraudulent behavior." *Wagner v. First*

---

possibility that a defendant has acted unlawfully." *Id.* "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

*Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006) (quotation omitted). To satisfy Rule 9(b), a plaintiff must allege:

> (1) *precisely* what statements were made in what documents or oral representations or what omissions were made, and (2) *the time and place* of each such statement *and* the person responsible for making (or, in the case of omissions, not making) same, and (3) *the content* of such statements *and* the manner in which they *misled the plaintiff*, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quotation omitted; emphasis added). In short, Johnson must set forth the "who, what, when, where, and how" of the Wittstadt Defendants' allegedly fraudulent behavior. *Belmont Holdings Corp. v. SunTrust Banks, Inc.*, 896 F. Supp. 2d 1210, 1219 n.9 (N.D. Ga. 2012). Johnson also must satisfy Rule 9(b) for his breach of duty and negligence claims, which sound in fraud. *See Wagner*, 464 F.3d at 1278 (fraud allegations in non-fraud claim must satisfy 9(b)). He does not.

Instead, Johnson simply, and wrongly, concludes that Mark and Rod Wittstadt "breached their duty to Johnson by inducing Hardwick to make false representations which the Wittstadts alone knew were false." (R.12, ¶ 151; *see also id.* at ¶¶ 115–116.)) Tellingly, 25 of Johnson's 40 fraud "facts" are not facts at all,

10

they are best guesses limited to "information and belief," including every single allegation ascribing an action of any kind to the Wittstadt Defendants. And Johnson's bald, false conclusion that the Wittstadt Defendants induced "Hardwick to make false representations . . ., as identified above and fully incorporated herein" is a hornbook Rule 9(b) violation. (R.12, ¶ 151.) Johnson's contentions are a far cry from the specificity required by Rule 9(b), the exact opposite of pleading "precisely what statements were made," and wholly fail to satisfy either the *Twombly* standard or the *Ziemba* requirements.

## B.   Hardwick's Conduct Cannot Be Imputed to the Wittstadt Defendants.

In a desperate attempt to pin the Wittstadt Defendants with Hardwick's misconduct, Johnson regurgitates boilerplate, conclusory legalese—Hardwick acted as a "duly authorized agent of [defendant] as the principal, with such principal legally bound for the care and loyalty of Hardwick in its business and bound for the neglect and fraud of Hardwick in the transaction of such business." (*See, e.g.*, R.12, ¶ 40.) But reciting legal-sounding "magic words" does not make an action viable, and this gambit fails as a matter of law.

When an alleged agent's "acts in fraudulently inducing the [plaintiff] to invest money . . . were personal acts for his own benefit . . . there is no basis for concluding that [the defendant] was vicariously liable . . . for [the alleged agent's]

11

tortious conduct or for any contractual obligation." *Hobbs v. Principal Fin Grp., Inc.*, 230 Ga. App. 410, 411 (1998); *see also Witcher v. JSD Props., LLC*, 286 Ga. 717, 719 (2010) ("[W]hen the agent departs from the scope of the agency, and begins to act for himself and not for the principal . . . he becomes an opposite party, not an agent [. . . and] the law does not impute to the principal notice of such fraud."); *Keenan v. Hill*, 190 Ga. App. 108, 111 (1989) (when an "agent departs from the scope of his duties and acts in such a way that his private interest outweighs his obligation as a corporate representative, the law will not impute his knowledge to the corporation.").

Hardwick, accused of embezzling millions from MSW, was the source of every alleged communication regarding the supposed loan investment. (R.12, ¶¶ 59–65, 68, 70, 73, 76–77.) When Johnson finally decided to communicate with the Wittstadt Defendants – after he loaned Hardwick money – he learned that Hardwick's alleged representations were false, and that he had no MSW guaranty. (*Id.*, ¶¶ 80–83, 85.) Georgia law prohibits Johnson's *ex post facto* attempt to impute Hardwick's alleged illegal actions to the Wittstadt Defendants.

**C.    Counts 1-3 Fail As No Written Contract Exists and the Statute of Frauds Precludes the Oral Contract Claim.**

First, no written loan contract exists between Johnson and the Wittstadt

Defendants.[15] To assert otherwise, is a fraud on the Court. (R.12, ¶¶ 89, 96.)

Johnson's admission that the "essential terms of the business transaction" were never reduced to writing eviscerates his purported contract claims. (*Id*. ¶ 74.) A party who "cannot point to any contractual provision that [the defendant] breached . . . cannot state a claim for breach of contract . . . ." *Am. Casual Dining, L.P. v. Moe's Sw. Grill, LLC*, 426 F. Supp. 2d 1356, 1369 (N.D. Ga. 2006). Johnson can point to no breached contract provision because no contract exists. His written contract counts (1–2) are spurious and his oral contract count (3) fails for lack of contract, lack of agency and under the Statute of Frauds.

Under the Georgia Statute of Frauds both (1) "a promise to answer for the debt, default, or miscarriage of another" and (2) "any commitment to lend money" must be in a signed writing to be binding on the promisor. O.C.G.A. § 13-5-30(2), (7). "[O]ral guarantees are unenforceable under the statute of frauds." *Hathaway v. Bishop*, 214 Ga. App. 870, 873 (1994). Johnson's oral guaranty and oral loan theories fail as a matter of law.

Johnsons' recitation of legal dictum in paragraph 104 cannot save his

---

[15] Plaintiff attached no loan agreement or guaranty between him and the Wittstadt Defendants because none exists. Johnson never signed nor saw such documents. Just as this Court could consider such documents on a Rule 12(b)(6) motion if they did exist, *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997), it should consider that no such documents exist here.

defective oral loan claim. Absent written loan documents, any oral discussions between Johnson and Hardwick were "no more than" an "agreement to agree in the future." *Bridges v. Reliance Trust Co.*, 205 Ga. App. 400, 402 (1992); *see also* R.12, ¶ 61 (Hardwick told Johnson that MSW "agreed to execute" a note). Johnson's wire at Hardwick's behest means nothing. *See Bridges*, 205 Ga. App. at 402. ("The performance argument fails because the lender's decision to make advances . . . does not establish the lender's intent to waive the requirements of the written loan and proceed under a different oral agreement.") And Johnson's vague assertions as to some, supposed oral terms mean nothing "because an unenforceably vague promise will not support an action for fraud." *Id*. at 403.

Finally, by law, Hardwick could not act as the Wittstadt Defendants' agent because an agent may not bind a principal on a promissory note made for the agent's own benefit. *Ozburn v. Morris & Co.*, 22 Ga. App. 325, 325 (1918). Equally important, agency to sign a promissory note "must be conferred in express terms." *Exch. Bank v. Thrower*, 118 Ga. 433, 433 (1903). "Whoever lends to one claiming the right to make or indorse negotiable paper in the name of another does so in the face of all the danger signals of business . . . if the lender parts with his money, he does so at his own peril. If the power was not in fact conferred, he must

bear the loss occasioned by his own folly . . . So strict is the rule that it will not be presumed even from an appointment of one as general agent . . . [.]" *Id.*

**D.   Count 4 Fails to State a Claim for Actionable Fraud.**

In addition to failing under Rule 9(b), Johnson's fraud claim[16] fails for three independent reasons: (1) he makes no well-pleaded allegations that the Wittstadt Defendants (as opposed to Hardwick) are liable for fraud; (2) the alleged fraud consists only of broken promises; and (3) with the exercise of minimal diligence, Johnson could have ascertained the alleged misrepresentations to be untrue.

1.    The factual allegations do not support a fraud claim.

Unable to point to a single interaction between himself and any of the Wittstadt Defendants, Johnson simply declares that Hardwick acted "on behalf of" MSW and MSW Law, Inc. "as [a] duly authorized employee[], owner[], manager[] and agent[]." (R.12, ¶ 118; *see also id.*, ¶ 73.) Such conclusory statements bear no weight. *Iqbal*, 556 U.S. at 679. And, Hardwick could not be acting as the agent of any party to the alleged loan agreement because Hardwick was defrauding all

---

[16]Actionable fraud requires: (1) a false representation of a material fact; (2) made with knowledge of the falsity; (3) intention to induce the plaintiff to act or refrain from acting; (4) justifiable reliance; and (5) damage. *Stiefel v. Schick*, 260 Ga. 638, 639 (1990); *Brown v. Morton*, 274 Ga. App. 208, 210 (2005); *Int'l Indem. Co. v. Terrell*, 178 Ga. App. 570, 574 (1986).

parties. *See* R.12-1, ¶¶ 10–15; *see also Pursley v. Stahley*, 122 Ga. 362, 362 (1905) (attorney who fraudulently drafted note not agent of either party).

Under Georgia law, "actionable fraud must be based upon a misrepresentation made *to* the defrauded party, and relied upon *by* the defrauded party." *Fla. Rock & Tank Lines, Inc. v. Moore,* 258 Ga. 106, 106 (1988) (emphasis in original). But the Wittstadt Defendants made no statements to Johnson. While Johnson disingenuously attempts to plead within a narrow exception – that a "misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other" (*id.* at 106 n. 1) – his theory has a fatal flaw: the alleged actionable misrepresentation was made only by Hardwick, not by the Wittstadt Defendants. More specifically, Johnson alleges that Hardwick's promise of "a very good investment" with an unconscionable $1 million return was the actionable misrepresentation (R.12, ¶¶ 60–62) but these promises are not alleged to have originated with the Wittstadt Defendants.[17] And, such promises are, at most, "[r]epresentations concerning expectations and hopes" to contract in the

---

[17] The alleged promise of a MSW guarantee could not be an actionable misrepresentation. Johnson wired funds without receiving any written guaranty and "oral guarantees are unenforceable." *Hathaway*, 214 Ga. App. at 873.

future, which "are not actionable." *Fuller v. Perry*, 223 Ga. App. 129, 131 (1996) (quoting *Smith v. McClung*, 215 Ga. App. 786 (1994)).

Johnson also whiffs on *justifiable* reliance: he does not say that he justifiably relied on information provided *by the Wittstadt Defendants*. *See Allen v. Remax N. Atlanta*, 213 Ga. App. 644, 646 (1994); *but see Florida Rock*, 258 Ga. at 106. As discussed in Section II.D.3, *infra*, wiring $3 million with no documentation on the hope of reaping an implausible $1 million return, without performing an iota of diligence, is certainly not justifiable. *See Real Estate Int'l v. Buggay*, 220 Ga. App. 449, 451 (1996) (failure "to exercise due diligence" precludes fraud claim).

Separately, for a fraud claim to survive a motion to dismiss, the defendants must be alleged to have acted with knowledge of the falsity and intention to induce the plaintiff to act. *See Comsouth Teleservices v. Liggett*, 243 Ga. App. 446, 448 (2000). Johnson alleges no such facts. To the contrary, the facts incorporated from the Embezzlement Complaint establish the exact opposite.

    2.    <u>An allegation of fraud based on broken promises is not actionable.</u>

"The general rule is that actionable fraud cannot be predicated upon promises to perform some act in the future. Nor does actionable fraud result from a mere failure to perform promises made. Otherwise any breach of a contract would amount to fraud." *Equifax, Inc. v. 1600 Peachtree, LLC*, 268 Ga. App. 186, 195

(2004) (quotation omitted). Hardwick's alleged promise to repay Johnson $4 million cannot equate to fraud against the Wittstadt Defendants under Georgia law.

3.     Johnson's failure to exercise any diligence dooms his claims.

"An action for fraud cannot be sustained when based upon alleged misrepresentations which are 'immaterial, not relied upon, or which the plaintiff *in the exercise of reasonable diligence* should have ascertained to be untrue.'" *Najem v. Classic Cadillac Atlanta Corp*., 241 Ga. App. 661, 664 (1999) (emphasis added) (quoting *Vaughan v. Oxenborg*, 105 Ga. App. 295, 299 (1962)). Had Johnson performed any diligence, called the Wittstadts, required a written agreement, contacted his financial advisor, sent an email to the Wittstadts, *anything*, he would have known that he had no agreement with the Wittstadt Defendants. Doing nothing kills his claim. *See Buggay*, 220 Ga. App. at 451 ("The law does not afford relief to one who suffers by not using the ordinary means of information, whether the neglect is due to indifference or credulity.").

## E.     Count 5, Alleged Breach of Fiduciary Duty, Fails.

Johnson's breach of fiduciary duty theory rests on the false conclusion that the Wittstadts, individually, were his lawyers.[18] (R.12, ¶¶ 134–135.) To be clear,

---

[18] Establishing "a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3)

this is a false,[19] and Johnson's counsel has admitted as much.[20] *See also Crane v. Albertelli*, 264 Ga. App. 910, 910 (2003) ("an attorney-client relationship is personal, not vicarious.") Undeterred, Johnson chips in another meaningless declaration: "all Defendants, and each of them, owed Johnson a fiduciary duty." (R.12, ¶ 134.) This conclusion has no effect. *Iqbal*, 556 U.S. at 679. The Wittstadt Defendants had no communications with Johnson regarding the supposed "loan," had no knowledge of it, were not present for any of the alleged communications between Johnson and Hardwick, and neither Mark nor Rod Wittstadt had an attorney-client relationship with Johnson at any time.[21] Contrary conclusory

---

damage proximately caused by the breach." *SunTrust Bank v. Merritt*, 272 Ga. App. 485, 489 (2005) (quotation omitted).

[19] "An attorney-client relationship cannot be created unilaterally in the mind of a would-be client." *Guillebeau v. Jenkins*, 182 Ga. App. 225, 231 (1987). Johnson has no relationship whatsoever with the Wittstadts. None. He has never met or spoken to Rod and has had no more than a single, brief, social introduction to Mark.

[20] *See* Greg Land, *$3M Loan at Heart of Golfer Dustin Johnson's Suit Against Lawyers*, Fulton County Daily Report, p. 5 (Nov. 5, 2014) ("Cornwell agreed" that "Johnson had never met or spoken to Gerard Wittstadt and had only met Mark Wittstadt once, briefly.").

[21] The two letters at Ex. 2 do not establish an attorney-client relationship with the Wittstadts, or any representation with MSW for any legal activity. The engagement letter signed by Hardwick describes **his** attorney-client relationship with Johnson as one "from time to time . . . for certain [undefined] legal matters." (R.12-2 at p. 2.) Hardwick made clear that he was "the attorney who primarily will work" on specified matters, "but only if they are brought to our attention and we

statements mean nothing without facts to support them. (*See*, *e.g*., R.12, ¶ 57.)[22]

Johnson makes no allegations to establish any attorney-client relationship with the Wittstadts or MSW Law and alleges no specific legal matter representation to trigger the terms of the alleged engagement. *See Smith v. Morris, Manning & Martin, LLP*, 293 Ga. App. 153, 163 (2008) (affirming grant of summary judgment for lack of evidence of specific attorney-client relationship at time of events).[23]

---

then agree to undertake representation." (*Id.*, p. 3.) Likewise the engagement terms make clear: "Unless you actually engage us after the conclusion of a matter to provide additional services or advice on issues arising from the matter, we will have no continuing obligation to advise you with respect to future legal developments or take other actions on your behalf." (*Id.*, p. 8.) And, to the extent any relationship between MSW and Hardwick ever existed, Johnson terminated it when Hardwick left the firm. (*Id.*, p. 9.) If Johnson contends that Hardwick's representation is imputed to all members of MSW, he is wrong. *See Henderson v. HSI Fin. Servs., Inc*., 266 Ga. 844, 845 (1996) (overruling proposition that "when a lawyer holds himself out as a member of a law firm the lawyer will be liable not only for his own professional misdeeds but also for those of the other members of his firm.") (quoting *First Bank & Trust Co. v. Zagoria*, 250 Ga. 844 (1983)).

[22] With regarding to Johnson's specious claims regarding post-demand conduct (R-12, ¶¶ 29, 85–88), and to the extent a relationship existed, which the Wittstadt Defendants deny: "Attorneys within a firm seeking advice to defend against threatened litigation by a current client clearly do not share a mutuality of interest with that client." *St. Simons Waterfront, LLC v. Hunter, Maclean, Exley & Dunn, P.C.*, 293 Ga. 419, 428 (2013).

[23] Johnson's citation to Georgia and Maryland Rules of Professional Conduct (R.12, ¶¶ 137–139) do not and cannot establish a claim. Indeed, the rules do "not give rise to a cause of action nor to create a presumption that a legal duty has been breached." Georgia Rules of Professional Conduct, Ch. 1, at Scope, ¶ 18. "They are not designed to be a basis for civil liability." *Id.*

Separately, Johnson's breach of fiduciary duty count fails because Johnson fails to identify an actionable breach. And, there are no factual allegations establishing that any purportedly alleged breach by the Wittstadt Defendants proximately caused Johnson damage.

## F.     Counts 6 Fails to State Claims for Negligence.

Johnson's ordinary negligence[24] theory fails because: (1) the supposition that the Wittstadts directed Hardwick's alleged breach is fanciful, at best; (2) the Wittstadt Defendants owed no duty as a matter of law; (3) Johnson's breach conclusions are inactionable; and (4) Georgia's economic loss doctrine bars a negligence claim.

First, were there anything that could have been done to stop Hardwick, the Wittstadt Defendants undeniably would have acted to prevent MSW's loss of tens of millions of dollars. Johnson's new fairy tale that the Wittstadts conspired to oust Hardwick and cause their own firm's loss is preposterous, not plausible.

---

[24] "To state a cause of action for negligence in Georgia . . . there must be (1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty." *City of Douglasville v. Queen*, 270 Ga. 770, 771 (1999). There are no factual allegations establishing any element of a plausible negligence claim against the Wittstadt Defendants.

Second, the Wittstadt Defendants have no duty to protect Johnson from Hardwick, a third party, as a matter of law. As held by the Georgia Supreme Court, "one owes no duty to protect another from injuries inflicted by a third party." *May v. State*, 295 Ga. 388, 398 (2014).

Third, Johnson fails to identify what, if anything, would be an actionable breach against the Wittstadt Defendants. Johnson only presents inactionable conclusions to the effect that the Wittstadt Defendants "induc[ed] Hardwick to make false representations" and did not take "reasonable steps to prevent Hardwick from acting in such a manner," with no factual support. (R.12, ¶ 151.)

Fourth, a "party who suffers purely economic losses must seek his remedy in contract and not in tort." *Gen. Elec. Co. v. Lowe's Home Ctrs., Inc*., 279 Ga. 77, 78 (2005). As Johnson seeks to recover economic loss, his negligence theories fail.

## G.    Count 7 Fails to State a Claim for Money Had and Received.

"An action for money had and received is merely one form of action to recover damages based on unjust enrichment." *Nat'l City Bank of Rome v. Busbin*, 175 Ga. App. 103, 107 (1985). In addition to failing as a "shotgun" claim, Johnson's purported claim for money had and received fails against MSW Law, Mark Wittstadt and Rod Wittstadt *ab initio* because the Amended Complaint alleges that the loan proceeds were sent to MSW. (R.12, ¶ 155.) *See Haugabook v.*

*Crisler*, 297 Ga. App. 428, 432 (2009) ("In order to maintain an action for money had and received it is necessary to establish that defendants have received money belonging to the plaintiff or to which he is in equity and good conscience entitled.") (quotation omitted).

Johnson's admissions that the loan was to be structured as a personal loan to Hardwick only (R.12, ¶¶ 14, 65, Ex. 3), defeats any money had and received claim against MSW. Johnson's recourse lies against his pal, not the firm that received Hardwick's loan proceeds.

## H.   Count 8 Fails to State a Conversion Claim.

Johnson's conversion count fails for three independent reasons: (1) he does not allege that any defendant but MSW has "actual possession" of any money; (2) conversion is not the appropriate claim for failure to pay money allegedly owed; and (3) he admits he had no right to the funds at the time of the alleged conversion.

First, actual possession is a necessary element for a conversion claim. *Washington v. Harrison*, 299 Ga. App. 335, 338 (2009). Count 8 fails at the outset as to the Wittstadts and MSW Law because Johnson does not allege "actual possession" of any property by them. (R.12, ¶¶ 162, 170–171.)

Second, under Georgia law, "conversion is not a viable claim where there is nothing more than a failure by the defendant to pay money owed to the plaintiff."

*Internal Med. Alliance, LLC v. Budell*, 290 Ga. App. 231, 239 (2008). Here, the conversion allegation merely alleges that Johnson is owed $3 million of unpaid loan funds. Allowing Plaintiff's conversion claim to proceed would directly contradict *Budell*'s clear statement of black letter Georgia law.

Third, Count 8 must be dismissed because Johnson admits that he voluntarily relinquished control over his funds at Hardwick's request. (R.12, ¶¶ 70–71, 162). "In Georgia, to maintain an action to recover for the conversion of personalty, a plaintiff must establish . . . that either he or his predecessor in interest had possession or an immediate right to possession of the converted property at the time of the alleged conversion." *Levenson v. Word*, 286 Ga. 114, 115–16 (2009) (internal citation omitted). By Johnson's admission, he had no right to possess the loaned funds, just a claim for repayment, months after he relinquished the loan proceeds. (R.12, ¶¶ 79–80.)

## I.     Count 9 Fails to State a Claim for Equitable Relief.

Johnson seeks equitable relief in the form of rescission or constructive trust. (*Id.*, ¶¶ 177, 179.) Neither is available to him.

It is axiomatic that before Johnson can rescind a contract, he must have an enforceable contract. As shown in Section II.C. above, Johnson has no contract. He

cannot produce a written contract and, by law, has no oral contract. As such, to the extent an equitable rescission count is asserted, it must be dismissed.

In Georgia, "a constructive trust is a remedy created by a court in equity to prevent unjust enrichment . . . it is not an independent cause of action . . . but a device by which property might be recovered if [the Plaintiff's] unjust enrichment claim were to prevail." *St. Paul Mercury Ins. Co. v. Meeks*, 270 Ga. 136, 137 (1998). Stating a wished-for remedy does not equate to stating a claim.

## J.    Counts 10 and 11 Allege Remedies, Not Causes of Action.

Both attorneys' fees and punitive damages are remedies, not causes of action. And, as already discussed above, these remedies are not available to Johnson because he cannot state a substantive claim for relief.

## III.   CONCLUSION

Johnson's conclusory, inflammatory assertions do not state a claim against the Wittstadt Defendants. Simply put, what Johnson theorizes, did not happen. No amount of re-pleading can revive Johnson's baseless claims. The Court should dismiss the Amended Complaint as to the Wittstadt Defendants with prejudice.

Respectfully submitted this 24th day of November, 2014.

**PARKER HUDSON RAINER & DOBBS LLP**

*/s/ William J. Holley, II*
William J. Holley, II

Georgia Bar No. 362310
WJH@phrd.com
Scott E. Zweigel
Georgia Bar No. 786616
SEZ@phrd.com
1500 Marquis Two Tower
285 Peachtree Center Avenue NE
Atlanta, Georgia 30303
Telephone: (404) 523-5300
Facsimile: (404) 522-8409

*Attorneys for the Wittstadt Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

In compliance with Local Rule 7.1D, I certify that the foregoing WITTSTADT DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT has been prepared in conformity with Local Rule 5.1. The foregoing memorandum was prepared with Times New Roman (14 point) type, with a top margin of one and one-half (1 ½) inches and a left margin of one (1) inch. This memorandum is proportionately spaced, and is no longer than 25 pages.

*/s/ William J. Holley, II*
William J. Holley, II

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing **THE WITTSTADT DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record in this action.

This 24th day of November, 2014.

*/s/ William J. Holley, II*
William J. Holley, II